

FILED
JUL - 1 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **UNDER SEAL** |
| v. | ) | |
| | ) | Case No. 1:19-mj-297 |
| JAMES P. PHIPPS, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jeffrey Fuller, Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1. I submit this affidavit in support of a criminal complaint and arrest warrant charging JAMES P. PHIPPS, who did knowingly and intentionally assault "Jane Doe," a United States citizen, on or about May 11, 2018, while aboard nonstop British Airways Flight 292 from Washington Dulles International Airport, in Dulles, Virginia, located within the Eastern District of Virginia, to London Heathrow Airport, an aircraft in flight within the special maritime and territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 113(a)(5).

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") in the Washington Field Office. I have been employed with the FBI for more than fourteen years, and I have received training from the FBI, including training in general law enforcement. Since May 2016, I have been assigned to the Washington Dulles International Airport office of the FBI, where I investigate violations of federal law which occur within the airport environment and onboard

aircraft. As part of my duties, I investigate crimes that occur within the special maritime and territorial jurisdiction of the United States.

3. I gathered the following facts in support of a criminal complaint and arrest warrant during the course of my investigation and through speaking with other individuals, including "Jane Doe," the victim in this case (hereinafter, "the Victim"). When I assert that a statement was made by an individual, that statement may be described in substance and in part, but my assertion is not necessarily intended to constitute a verbatim recitation of the entire statement. Because of the affidavit's limited purpose, I have included facts sufficient to support probable cause, but I have not included every fact discovered during the investigation or known to the government.

## RELEVANT STATUTORY PROVISIONS

4. Title 18, United States Code, Section 113(a)(5), provides in relevant part that "[w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows . . . [for] [s]imple assault, by a fine under this title or imprisonment for not more than six months, or both . . . ."

5. Title 18, United States Code, Section 7(5), provides in relevant part that the term "special maritime and territorial jurisdiction of the United States," includes "[a]ny aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State."

## **PROBABLE CAUSE**

6. On or about May 11, 2018, the Victim was a passenger on nonstop British Airways Flight 292 (hereinafter, "the Flight"), which departed from Washington Dulles International Airport in Dulles, Virginia, which is located within the Eastern District of Virginia, and arrived at London Heathrow Airport in the United Kingdom.

7. Defendant JAMES P. PHIPPS, a national of the United Kingdom, who was 28-years-old at the time he committed the assault described in the affidavit, was a passenger on the Flight. Defendant PHIPPS occupied 37G, an aisle seat on the right side of a middle row of the aircraft.

8. The Victim occupied 37D, an aisle seat on the left side of a middle row of the aircraft. She was on her way to Milan, Italy to participate in a women's empowerment conference. The Victim had never met or spoken to Defendant PHIPPS prior to the Flight. The middle two seats between the Victim and Defendant PHIPPS were empty. Business records provided by British Airways confirmed the seating assignments of the Victim and Defendant PHIPPS.

9. Defendant PHIPPS resided within the Eastern District of Virginia during the time period in which he assaulted the Victim aboard a British Airways aircraft that was in flight within the special maritime and territorial jurisdiction of the United States. Information gathered during the course of this investigation confirms that British Airways is a wholly owned subsidiary of International Airlines Group, S.A., a publicly traded company, which is owned, in part, by shareholders who are United States citizens. Upon information and belief, Defendant PHIPPS continues to reside within the Eastern District of Virginia and is expected to be arrested in the Eastern District of Virginia.

10. While the aircraft was in flight over the high seas, the Victim, who had been sleeping, woke up when Defendant PHIPPS touched her without her permission. Defendant PHIPPS leaned over to her, grabbed her by the back of the neck, and pulled her toward him to kiss her. The Victim again pushed Defendant PHIPPS away and yelled, "No! Get the fuck off of me!" Defendant PHIPPS then took the Victim's hardcover book and threw it at her face.

11. The Victim approached a flight attendant and reported the incident. The crew moved the Victim to another seat, and she had no further contact with Defendant PHIPPS. The Victim cried for the remainder of the Flight.

12. Shortly following the Flight and prior to the FBI's involvement in this matter, the Victim described Defendant PHIPPS' assault on her to a coworker via a social media messaging application, and the Victim has since provided me with copies of this conversation. In these messages, the Victim explained that "about 2 hours into the 7 hour flight i woke up from a deep sleep bc he was like touching me." The Victim went on to tell her friend, "and he took my back of my neck with his hand and tried to pull me in." Finally, the Victim explained, "he got so angry i rejected him that he took my hard back book and threw it at my face."

13. The Victim filed a report with the FBI on or about June 22, 2018. The Victim made the FBI report following a suggestion from a coworker. Based on my training and experience, victims of the types of assault suffered by the Victim often delay reporting such incidents to law enforcement.

14. I interviewed the Victim on multiple occasions. The Victim's statements during these interviews have been consistent. According to the Victim, Defendant PHIPPS had consumed at least four, and not more than seven, single-serving airplane-sized bottles of wine. The Victim had not consumed any alcohol or any other substances that would have impaired her ability to

perceive and recall the events surrounding the assault she suffered as a result of Defendant PHIPPS' conduct.

15. While airborne, the Victim reported Defendant PHIPPS' assault on her to a British Airways crew member (hereinafter, "Airline Employee-1") who was working on the Flight. Airline Employee-1 reported to me that the Victim, upset and crying, told her that she woke up when Defendant PHIPPS pulled her toward him by her neck, trying to kiss her. Airline Employee-1 said that the incident occurred midway through the Flight, somewhere over the Atlantic Ocean. Airline Employee-1 also filed a contemporaneous report of the assault on or about May 12, 2018, in which she wrote that the Victim "was woken up by Mr. James Phipps . . . who had tried to kiss her according to [the Victim]."

16. According to Airline Employee-1's contemporaneous report of the assault, Airline Employee-1 approached PHIPPS and told him that he "had upset [the Victim] and had made her feel uncomfortable." In interviews, Airline Employee-1 indicated she woke up PHIPPS for this conversation. During the conversation, he seemed confused and in a sleeplike state, and he claimed to have no recollection of the event. According to the report, "Mr Phipps seemed unaware and shocked when I told him what he was alleged to have done. [H]e appeared confused and seemed embarrassed and wanted to apologise to [the Victim]."

17. After the above-described assault occurred, the Victim cried and was in a state of shock. On her return flight to the United States, the Victim was unable to sleep. In her electronic report to the FBI, the Victim said that over a month after the incident she was "still afraid to ever fall asleep on a plane." To the present day, the Victim continues to live with a fear of flying as a result of Defendant PHIPPS' assault on her.

## CONCLUSION

18. Based on the facts set forth above, I submit that this affidavit supports probable cause for a criminal complaint and arrest warrant for JAMES P. PHIPPS, who on or about May 11, 2018, while aboard nonstop British Airways Flight 292 from Washington Dulles International Airport, in Dulles, Virginia, to London Heathrow Airport, an aircraft in flight within the special maritime and territorial jurisdiction of the United States, did knowingly and intentionally assault the Victim, in violation of Title 18, United States Code, Section 113(a)(5).

Jeffrey Fuller
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 1st day of July, 2019.

/s/
Ivan D. Davis
United States Magistrate Judge